FILED
2014 May-30  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **ROSE MARIE LANGLEY** | ) | |
| **o/b/o D.A.S.,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 1:13-cv-1374-CLS** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Rose Marie Langley commenced this action on July 24, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge, and denying the claim she asserted on behalf of her son, D.A.S. ("claimant"), for child supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant was born on May 23, 2010, and was not quite three years old when the ALJ issued his administrative decision on April 9, 2013.[1]  He alleges childhood disability due to right eye problems that he has suffered since birth.  The ALJ found that claimant had the severe impairments of Axenfield-Rieger's syndrome, congenital glaucoma in the right eye, and congenital cataract in the right eye.[2]  Despite those conditions, the ALJ found that claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled a listed impairment.[3]  Claimant asserts that the ALJ's conclusion was not supported by substantial evidence because the ALJ:  (1) improperly considered the opinions of the treating and examining physicians; (2) should have found claimant to be disabled under Listing 102.00, or to functionally equal a Listing; and (3) denied claimant due process of law by failing to properly develop the administrative record.  The court concludes those contentions are without merit, and the ALJ's decision is due to be affirmed.

A.      **The ALJ's Functional Equivalence Findings**

---

[1] *See* Tr. 8, 14.

[2] Tr. 15.

[3] Tr. 15-24.

2

The ALJ's findings on functional equivalence are relevant to several of claimant's arguments, so those findings bear separate discussion.  To functionally equal a listing, the claimant's impairments "must be of listing-level severity; *i.e.,* [they] must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ." 20 C.F.R. § 416.926a(a).  The "domains of functioning" to be evaluated include: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; [and] (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  Social Security regulations inform claimants that "marked" limitations in these domains exist

> when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities.  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).  "Extreme" limitations exist

> when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also

3

means a limitation that is "more than marked."  "Extreme" limitation is the rating we give to the worst limitations.  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R.  § 416.926a(e)(3)(i).

The ALJ found that claimant did not have any limitations in any of the domains of functioning, other than health and physical well-being.[4]  Further, claimant had only marked, not extreme, limitations in the domain of health and physical well-being.[5] Social Security regulations provide some examples of limitations a child of any age might have in this domain: *i.e.,*

(i) You have generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s).

(ii) You have somatic complaints related to your impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia).

(iii) You have limitations in your physical functioning because of your treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments).

(iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical

---

[4] Tr. 18-24.

[5] Tr. 23-24.

functioning.

>    (v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

20 C.F.R. § 416.926a(*l*)(4).  The regulations also state that, for the domain of health and physical well-being, the Commissioner may consider a claimant to have a marked limitation if:

>    you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent" means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more.  We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv).  The Commissioner may find an extreme limitation in that domain if:

>    you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation in paragraph (e)(2)(iv) of this section.   However, if you have episodes of illness or exacerbations of your impairment(s) that we would rate as "extreme" under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases. See §§ 416.925 and 416.926.

20 C.F.R. § 416.926a(e)(3)(iv).

Upon consideration of those regulations, the ALJ made the following findings with regard to claimant's health and physical well-being:

> The Claimant has marked limitation in health and physical well being. The Claimant's vision impairment and requisite treatment led to the determination that the Claimant is markedly limited in this domain. While the operation one year ago shows promise in allowing the Claimant to use his right eye, the undersigned recognizes he has a guarded prognosis as corneal transplants, in the best of circumstances, are often more of an art than science. In addition to facing the prospect of graft rejection, the Claimant will have to be put under anesthesia for examinations and suture removal, which occurs in gradually over time [*sic*]. However, the last treatment reports from his ophthalmologist show signs of hope that the Claimant will be able to have meaningful sight in his eye. Despite this hope, in making this finding, the undersigned considered the Claimant's condition as it has existed for the duration of the alleged period of disability, his birth. Even if the undersigned assumed the graft would be completely rejected and thus fail, the Claimant's right eye impairment would not *extremely* limit the Claimant because he retains normal function in his left eye and would still be able to see.[6]

## B.    Physician Opinions

Claimant asserts that the ALJ "failed to show good cause why the opinion of the plaintiff's treating sources and his mother should not be given substantial or considerable weight,"[7] and that the ALJ "did not properly consider the opinions of Plaintiff's treating and examining doctors in rendering his hasty decision."[8] The court

---

[6] Tr. 24 (emphasis in original, alteration supplied).

[7] Doc. no. 9 (claimant's brief), at 7.

[8] *Id.* at 17.

disagrees, and concludes that the ALJ properly considered *all* of the medical evidence of record.

It is true that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors.

7

*See* 20 C.F.R. § 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Claimant did not actually identify the treating physician opinion to which she contends the ALJ should have given controlling weight, and the court's review of the record did not reveal any such opinions. Instead, claimant's argument focuses on the fact that the ALJ gave significant weight to the opinion of Dr. Henry Durham, the medical expert who testified during the administrative hearing. Dr. Durham completed a set of Medical Interrogatories on July 15, 2012. He stated that claimant suffered from glaucoma and corneal scarring in the right eye that might be helped by surgery but still would be likely to cause diminished vision. He also stated that claimant did not satisfy the requirements of any of the Listings, because his left eye was much better than his right eye. Even though claimant was too young to have standard vision testing performed on his left eye, the examinations that were conducted did not indicate any problems with the left eye. Dr. Durham also opined that claimant did not have any impairments in any domain of functioning except for health and physical well-being, in which he had a marked impairment due to the fact that the surgical procedures he recently underwent would require prolonged follow-

up.[9]  Dr. Durham provided consistent testimony during the administrative hearing.[10]

The ALJ afforded Dr. Durham's testimony significant weight because it was "well reasoned and consistent with the objective evidence."[11]  Even though Dr. Durham is not an ophthalmologist, he is a pediatrician, and thus possesses "adequate insight into evaluating the Claimant's cognitive, social, and behavioral development,"[12] characteristics that also are important factors in evaluating claimant's overall functioning.  The ALJ found that any deficiency in Dr. Durham's opinion due to his lack of specialty was harmless, because Dr. Durham "already found the Claimant is markedly limited" in the domain of health and physical well-being.[13]  He also found no basis in the record for concluding that claimant suffered *extreme* impairment in that domain because his left eye was fully functioning.

Those conclusions were supported by substantial evidence.  There is no indication in the record that claimant suffered any significant impairment in his left eye, and no other medical assessment that conflicted with Dr. Durham's opinion.  In fact, the only other medical assessment in the record — that of the state agency

---

[9] Tr. 273-80.

[10] *See* Tr. 40-48.

[11] Tr. 18.

[12] *Id.*

[13] *Id.*

physician — actually is consistent with Dr. Durham's opinion.[14]

To the extent claimant argues that the ALJ should have given controlling weight to his mother's testimony about his impairments, the court disagrees. Claimant's mother is an "other source" under 20 C.F.R. § 416.913(d)(4), so the ALJ could decide whether to consider her testimony and how much weight to afford it. The problem for claimant is that the ALJ *did* consider his mother's testimony, and he found it to be credible.  Even so, the mother's testimony did not support the existence of extreme limitations in health and physical well-being, or in any other area that would lead to a finding of disability.[15]   The function report claimant's mother completed indicated that claimant's ability to learn, move about, and interact with others was not limited.[16]   Additionally, claimant's mother testified during the administrative hearing that he was "fine" in all respects other than his vision problems,[17] that he could play outside as long as it wasn't in too much sunlight,[18] and that he could see "perfectly" out of his left eye as long as he was not wearing a patch.[19]

---

[14] Tr. 259-64.

[15] Tr. 18.

[16] Tr. 178-92.

[17] Tr. 56.

[18] Tr. 59-60.

[19] Tr. 62.

**B.      Listings and Functional Equivalence**

**1.      Listing 102.00, Special Senses and Speech**

Claimant asserts that he meets the requirements of Listing 102.00, for Special Senses and Speech.  However, that Listing actually encompasses many different standards for determining disability,[20] and claimant does not specify which standard he claims to meet.  Instead, claimant cites only to the prefatory comments in the introductory section of the Listing.  Because claimant did not offer any more detailed argument about satisfaction of the various Listing requirements, the court also will not address the issue in much detail.  It will suffice to say that there is no evidence that any of the requirements of the Listings related to vision have been satisfied.  As discussed above, there is no evidence of significant impairment in claimant's left eye, and the applicable Listings require significant impairment of the "better eye."  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 102.02, 102.03, 102.04.  Thus, the ALJ's finding that claimant did not satisfy any of the Listings was supported by substantial evidence.[21]  It is of no consequence, as claimant suggests, that he is too young to

---

[20] *See, e.g.,* Listing 102.02 (Loss of central visual acuity), which has two sub-parts; Listing 102.03 (Contraction of the visual field in the better eye), which has three sub-parts; Listing 102.04 (Loss of visual efficiency, or visual impairment, in the better eye), which has two sub-parts.

[21] The ALJ found:

The Claimant's visual impairments do not meet the requirements contained in section 102.02.  The medical expert provided a detailed analysis regarding why the Claimant's vision impairment, which primarily affects his right eye, does not meet

undergo "standard" vision testing, because the Regulations provide for alternative methods of assessing vision in babies and toddlers.  20 C.F.R. pt. 404, subpt. P, app. 1, § 102.00(A)(5)(a)(iv).

## 2. Functional equivalence

Claimant also asserts that his impairments functionally equal a listing.  He challenges only the ALJ's finding that he suffered marked impairments in the domain of health and physical well-being.   Instead, he asserts that he had extreme impairments in that domain "because he has severe impairments which limit his function.  Dr. Martinez noted Plaintiff would require multiple surgeries and patching of his better eye to treat ambloypia.  She further noted Plaintiff had a 'guarded visual prognosis.'"[22]  As discussed above, however, the record supports only impairments of claimant's right eye, not his left eye.  The ALJ's decision that claimant suffered only marked impairments in health and physical well-being was supported by

---

either section of said listing . . . .  He explains that due to the Claimant's age, two years old as of the date of the supplemental hearing, he was not old enough to undergo standard vision testing . . . .  Despite the lack of testing, the medical expert wrote the Claimant's left eye, his better eye, is generally unaffected by his impairments, which suggests the Claimant's left eye vision would not [be] as bad as required in section 102.02.  While the Claimant was previously noted to have anterior segment dysgenesis, the Claimant was able to follow a light with his left eye, and treatment reports showed the Claimant's left eye had normal function and had a clear lens and cornea . . . .

Tr. 15 (alteration supplied, citations to the record omitted).

[22] Claimant's brief, at 15.

12

substantial evidence, including the opinions of the medical expert and the state agency physician.

## C.   Due Process/ Failure to Develop the Record

Finally, claimant asserts that the ALJ violated his right to due process when the ALJ failed to properly develop the administrative record: *i.e.,* by failing to order a consultative examination by a specialist in ophthalmology.

Claimant bears the ultimate burden of producing evidence to support his disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)). Even so, an ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision. Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (emphasis supplied).

The record reflects that the ALJ *did* initially schedule a consultative examination with a ophthalmology specialist, but claimant declined to attend. The ALJ described those events during the administrative hearing as follows:

13

The Mother appeared and testified at a hearing held on June 11, 2012, in Montgomery, Alabama.

At the hearing, the Mother provided testimony, but the undersigned directed the matter be placed in post development so that an impartial medical expert could review the Claimant's medical records. The medical expert, Henry S. Durham, Jr., M.D., submitted responses to interrogatories on July 15, 2012. In light of the medical expert's interrogatory responses, the Claimant's attorney requested a supplemental hearing on August 1, 2012 . . . . That motion was granted. On August 24, 2012, the Claimant's attorney requested the undersigned order a consultative ophthalmological examination . . . . Pursuant to the attorney's request, the undersigned ordered the consultative ophthalmological examination. However, the Claimant did not attend the consultative ophthalmological examination because the Mother declined to travel to the examination in Montgomery, Alabama, the site of the hearing . . . . On December 19, 2012, the Claimant's attorney moved that the consultative examination be rescheduled for an ophthalmologist in Birmingham, Alabama. That motion was denied as the grounds underlying the motion did not merit the action requested by the Claimant's attorney. A medical expert had provided a detailed assessment of the evidence and the representative provided no evidence of a significant change in the claimant's vision. As a side matter, the undersigned also notes contact from the state development agency that finding an ophthalmologist willing to perform the type of examination desired by the representative was problematic because the examination would have to be performed under anesthesia[ due to claimant's age], conditions outside the scope of state agency consultative examinations. On January 6, 2013, the Claimant's attorney resubmitted the December 19, 2012 motion and also moved that the hearing be rescheduled because the Claimant and his Mother moved . . . . The undersigned denied this motion as the Claimant and his Mother had moved more than three months prior to the supplemental hearing date and remained within a reasonable distance to attend . . . . However, the undersigned offered the Claimant's representative the opportunity to appear at the hearing by herself as the Mother had already provided testimony in the earlier hearing and the purpose of the supplemental hearing was to allow the

14

representative the opportunity to question the medical expert, Dr. Durham.  At the second hearing, the impartial medical expert was present, so the Claimant's attorney had an opportunity to examine the medical expert in light of his interrogatory responses.  On January 10, 2013, the supplemental hearing was held in Montgomery, Alabama.  The Claimant's attorney, Carla Ray, Esq., and the impartial medical expert were present.[23]

It is apparent that the ALJ offered claimant a reasonable opportunity to be examined by a specialist.  Claimant's decision to decline that opportunity should not be held against the ALJ.

Additionally, there is no indication that an additional consultative examination by an ophthalmologist was necessary.  Instead, the court concludes that the record in this case, including the records of claimant's treating physicians and the opinions of the medical expert and the state agency physician, was sufficient to give substantial support to the ALJ's decision.

## D.    Conclusion and Order

In summary, the court concludes that the ALJ's decision regarding claimant's disability was supported by substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed to claimant.  The Clerk is directed to close this file.

---

[23] Tr. 11-12 (alteration supplied, citations to the record omitted).

DONE this 30th day of May, 2014.

_____
United States District Judge